301 F.2d 667
 PAWNEE INDIAN TRIBE OF OKLAHOMA, consisting of the four confederated bands of Pawnee Indians, namely: Chaui or Grand Pawnee, Kitkehahki or Republican Pawnee, Pitahauerat or Tappage Pawnee, and Skidi, Loup or Wolfe Pawnee,
v.
The UNITED STATES.
 Appeal No. 7-61.
 United States Court of Claims.
 April 4, 1962.
 Certiorari Denied June 11, 1962.
 
 See 82 S.Ct. 1556.
 John Wheeler, Jr., Tulsa, Okl., for plaintiff; Arthur B. Honnold, John M. Wheeler, and Robert L. Wheeler, Tulsa, Okl., on the briefs.
 Ralph A. Barney, Washington, D. C., with whom was Ramsey Clark, Asst. Atty. Gen., for defendant.
 WHITAKER, Judge.
 
 
 1
 This case is before the court on appeal from the Indian Claims Commission.
 
 
 2
 The issues presented are the proper valuation of the lands on the dates they were ceded to the United States and the credits to which the United States is entitled.
 
 
 3
 The lands are located in Kansas and Nebraska. On October 9, 1833, the Tribe ceded to the United States by treaty 13,074,000 acres; on August 6, 1848, 110,419 acres; on September 24, 1857, 9,878,000 acres; and on March 3, 1875, 4,800 acres. The lands ceded on October 9, 1833, were valued by the Indian Claims Commission at 35 cents an acre, the lands ceded on August 6, 1848, at 90 cents an acre; the lands ceded on September 24, 1857, at 50 cents an acre, and the lands ceded on March 3, 1875, at $2.50 an acre.
 
 
 4
 Both parties except to these valuations. We have carefully considered the findings and opinions of the Commission and the briefs and oral argument of the parties. The Commission has carefully reviewed the evidence in well considered opinions and we are fully satisfied that the valuations arrived at by it are amply supported by substantial evidence.
 
 
 5
 The next question is the credits to which the United States is entitled.
 
 
 6
 Plaintiff says that the United States is entitled to a credit only for those payments that were absolutely required by the treaties, but not to those which were made pursuant to the exercise of the discretion reposed in the President by the treaties to pay such additional amounts as he thought best. Plaintiff does not give any reasons why it thinks defendant is not entitled to credit for these amounts, and we can think of none.
 
 
 7
 The Commission has held that the defendant is entitled to credit for only the cash value of the amounts paid as of the treaty dates. Is this correct?
 
 
 8
 The total amount paid under the Treaty of 1833 was $148,200. This was not all paid at one time, but over a period of years. The Commission commuted this to a cash value at the date of the treaty of $115,095.73, and gave defendant credit for this amount. The Commission said this was the sum which, if invested at 5 percent interest, would have amounted, with interest, to the aggregate of the amounts paid on the dates they were paid. The aggregate amount paid was $148,200. Defendant was credited with $115,095.73. Both plaintiff and defendant contest this action.
 
 
 9
 Also, defendant paid, under the 1857 treaty, the total sum of $200,000 in discharge of its obligation to pay the tribe an annuity of $40,000 a year for five years. This was commuted to a cash value as of the date of the treaty of $117,560.27, and defendant was given credit for this amount.
 
 
 10
 Again, defendant paid in yearly installments a total of $1,664,131.68, in addition to the annuity payments, of which the Commission allowed $1,344,281.20. This latter amount was commuted to a cash value as of the date of the treaty of $568,235.54.
 
 
 11
 The commutation of these amounts to a cash value as of the date of the treaty was required by our decisions in Miami Tribe of Oklahoma v. United States, Ct. Cl., 281 F.2d 202, cert. denied 366 U.S. 924, 81 S.Ct. 1350, 6 L.Ed.2d 383, and Crow Tribe of Indians v. United States, Ct.Cl., 284 F.2d 361, cert. denied 366 U. S. 924, 81 S.Ct. 1350, 6 L.Ed.2d 383, but, on reconsideration, we have come to the conclusion that our decisions in those cases were in error.
 
 
 12
 Ordinarily, when a purchaser desires to defer part of the purchase price, he agrees to pay interest on the deferred payments; but here there was no such agreement. What the Commission has done in this case, and what we did in the cases referred to, was to credit the United States with a sum which, if put at interest at 5 percent, would have amounted, with interest, to the aggregate of the deferred payments. Defendant was credited with a sum less than it had paid, because it was assumed that, if this sum had been paid in cash and invested, it would have earned enough at 5 percent for the aggregate to equal the amount of the deferred payments.
 
 
 13
 It now seems evident to us that this is tantamount to charging the United States with interest — in face of the well established rule that the United States is not liable for interest, in the absence of a contractual or statutory requirement to pay interest.
 
 
 14
 Had the defendant paid interest on the deferred payments, it would have been credited with the full amount of the payment on the principal. Since it did not pay interest on them, the amount paid is reduced to an amount which, if paid in cash and invested at 5 percent, would have amounted to the aggregate of the amount of the deferred payments.
 
 
 15
 We are of opinion that defendant is entitled to credit for the full amount paid, although paid over a period of years.
 
 
 16
 In Cherokee Nation v. United States, 270 U.S. 476, 490, 46 S.Ct. 428, 70 L.Ed. 694, the Supreme Court said:
 
 
 17
 "When we consider the rule requiring an express provision of contract or statute to justify the imposition of interest in adjudicating any claim against the United States, we can find nothing in the circumstances of this case to increase the interest as adjudged. The additional interest now claimed is sought really as damages for the delay of Congress in appropriating the sum due in 1895 as the United States promised in the 1891 agreement. But the rule as to interest against the United States does not allow us to adjudge interest as damages at all. Congress must expressly provide for it or the contract must so provide. The only contractual obligation here is for simple five per cent. interest until payment."
 
 
 18
 Neither the statutes nor the treaties provided for interest on the deferred payments.
 
 
 19
 The parties never intended that the entire consideration should be paid for in cash. It would have been most unwise to have done so. The best interest of the Indians demanded that it be paid periodically. This is what the parties agreed upon and the payments should be credited in accordance with the agreement.
 
 
 20
 Under the 1833 treaty the United States agreed to pay $4,600 a year for 12 years in "goods", that is, food, clothing, etc. It would have been absurd to furnish all of the goods on the treaty date. Many things were to be furnished as needed; others, conditionally, and others in the discretion of the President. It was never intended that the entire consideration should be turned over when the treaty was signed.
 
 
 21
 All the decisions of this court under the Indian Claims Commission Act, until the Miami case and the Crow case, supra, have held that a tribe was not entitled to interest on its claim, unless the treaty or other agreement provided for it, or there had been a taking under the Fifth Amendment. Choctaw Nation v. United States, 91 Ct.Cl. 320, 402-403, cert. denied, 312 U.S. 695, 61 S.Ct. 730, 85 L.Ed. 1130; Northwestern Bands of Shoshone Indians v. United States, 95 Ct.Cl. 642, 694; Osage Nation v. United States, 97 F.Supp. 381, 119 Ct.Cl. 592, 671, cert. denied 342 U.S. 896, 72 S.Ct. 230, 96 L.Ed. 672; Kiowa, Comanche and Apache Tribes v. United States, 163 F.Supp. 603, 143 Ct.Cl. 534, cert. denied 359 U.S. 934, 79 S.Ct. 650, 3 L.Ed.2d 636. What the Commission has done in this case, and what we did in Miami Tribe of Oklahoma, supra, was to allow the United States a credit only for an amount which, together with interest, would have amounted to the payments made over a period of years. This is contrary to all the decisions and must be overruled.
 
 
 22
 This leaves for consideration the credit to which the United States is entitled for the payments made on account of the perpetual annuity of $30,000 per year. A total of $2,910,000 had been paid on this account, apparently by the end of the fiscal year 1948, and payments of $30,000 a year have continued thereafter, and will continue ad infinitum, unless some alternate agreement is entered into in the future.
 
 
 23
 The Commission has not allowed defendant credit for the payments made, but for a sum which, if invested at 5 percent, would have earned $30,000 per year. We think this is correct.
 
 
 24
 In Miami Tribe of Oklahoma v. United States, 175 F.Supp. 926, 146 Ct.Cl. 421, we held the United States was not entitled to be credited with the annuity payments, and we also held it was not entitled to credit for the amount which, if invested at a certain rate of interest, would have yielded the amount of the annuity payments. We did not give it credit for the latter amount apparently for the reason that the annuity was not intended to be perpetual (page 472, 175 F. Supp. page 955), and also because at a later date the annuity was commuted and the commuted value paid to the tribe (page 473, 175 F.Supp. page 956).
 
 
 25
 But here there is no doubt that the United States agreed to pay the annuity in perpetuity. Nothing but the yearly payments have even been paid or ever will be paid, so long as the treaty remains in force. In such case, it seems to us, the United States should be credited with that amount which, had it been paid to the tribe, could have been invested by it to yield the amount of the yearly payments required by the treaty. Although not paid to the tribe, there was a constructive payment by the United States to itself, as trustee for the tribe, in perpetuity. We think defendant is entitled to credit for this amount. Certainly, having paid over $3,000,000 on account of this perpetual annuity, defendant is entitled to credit for some amount. The amount allowed by the Commission seems to us just and proper.
 
 
 26
 The action of the Indian Claims Commission in respect to the perpetual annuity is affirmed.
 
 
 27
 When the Pawnee Reservation was laid out in 1859 a tract of 4,800 acres which should have been included in the reservation was omitted. When the error was discovered, the Indian Superintendent at Omaha wrote the Commissioner of Indian Affairs asking, "On behalf of said Pawnee Indians" that they be paid for these lands. Accordingly, the Congress in the Act of March 3, 1875 (18 Stat. 420, 448), appropriated $6,000 to pay for them. This sum was paid.
 
 
 28
 The United States thus acquired this acreage by purchase and not by condemnation and, hence, plaintiff is not entitled to interest.
 
 
 29
 The case is remanded to the Indian Claims Commission for further proceedings not inconsistent with this opinion.
 
 
 30
 It is so ordered.
 
 
 31
 JONES, Chief Judge, and DURFEE and LARAMORE, Judges, concur.